# COURT OF APPEALS

OF

NORTH CAROLINA

AT

RALEIGH

WADE BRYAN BULLOCH, PETITIONER v. NORTH CAROLINA DEPARTMENT OF
CRIME CONTROL AND PUBLIC SAFETY; NORTH CAROLINA HIGHWAY PATROL,
RESPONDENT

No. COA12-115

(Filed 2 October 2012)

**Administrative Law—State Personnel Commission—no just
cause to dismiss petitioner**

The trial court did not err by concluding that the State
Personnel Commission (SPC) properly determined that defend-
ant North Carolina Department of Crime Control and Public
Safety (Department) did not have just cause to dismiss petitioner
from his employment with the North Carolina Highway Patrol.
The SPC's ultimate conclusion that the Department lacked just
cause was not erroneous and the SPC's supporting findings of
fact and conclusions of law were not erroneous.

Appeal by Respondent from decision and order entered 23
August 2011 by Judge Howard E. Manning, Jr., in Wake County
Superior Court. Heard in the Court of Appeals 15 August 2012.

*The McGuinness Law Firm, by J. Michael McGuinness, for
Petitioner.*

*Attorney General Roy Cooper, by Assistant Attorney General
Tamara S. Zmuda, for Respondent.*

1

*Richard C. Hendrix for Amicus Curiae North Carolina Troopers Association and Richard E. Mulvaney for Amicus Curiae National Troopers Coalition.*

STEPHENS, Judge.

On 6 May 2005, Wade Bryan Bulloch, who at the time was a Line Sergeant with the North Carolina Highway Patrol (the "NCHP"), a division of the North Carolina Department of Crime Control and Public Safety (the "Department), was dismissed from his employment on grounds of unacceptable personal conduct. On 26 July 2005, Bulloch challenged his dismissal by filing with the Office of Administrative Hearings (the "OAH") a petition for a contested case hearing against the Department. Bulloch's case was heard in the OAH on 29 and 30 July 2009 and 4 August 2009[1] before Administrative Law Judge Beecher R. Gray ("ALJ Gray").

The evidence before ALJ Gray tended to show the following: Bulloch served with the NCHP from 1989 until his dismissal in 2005. During his tenure with the NCHP, Bulloch earned an exemplary service record and "always ha[d] been in good standing and [] never [] had any adverse action or punishment." Moreover, appraisals of Bulloch's job performance, which were admitted into evidence, "demonstrate[d] substantial and consistent very high conduct ratings."

In 1997, Bulloch was diagnosed with depression, and in 2003, with bipolar disorder. In early December 2004, Bulloch's physician took Bulloch off his medication for depression and thereafter prescribed lithium for Bulloch's bipolar condition. In the evening of 14 December 2004, Bulloch took his first recommended dosage of lithium. Later that night, when off duty, Bulloch consumed some alcohol and attended the NCHP Christmas party with his girlfriend. At the party, Bulloch consumed more alcohol before attempting to dance with his girlfriend. When his girlfriend resisted, Bulloch employed a "defensive tactic" "taught by the [NCHP]" and "moved [his girlfriend's] arm behind her back so as to bring her along with him." His girlfriend began to cry and indicated Bulloch was hurting her. Bulloch then "stopped his efforts at dancing," and he and his girlfriend left the party.

Upon leaving the party, Bulloch "became frustrated and very emotional," and his girlfriend told him that she was leaving him. At

---

1. There is no indication in the record on appeal regarding the cause for the nearly four-year period between the filing of Bulloch's petition with the OAH and Bulloch's hearing.

home, Bulloch "began to break down," "became suicidal[,] and took two [] sleeping pills." Bulloch retrieved his service weapon and threatened to kill himself in front of his girlfriend. When Bulloch's girlfriend left the room, Bulloch "placed [his service pistol] to his temple but then removed it and discharged one round into the floor of his bedroom." When his girlfriend returned to the bedroom, Bulloch told her he had taken the entire bottle of sleeping pills. Bulloch's girlfriend called 911, and Bulloch was transported to the hospital. Shortly thereafter, Bulloch was relieved of duty "for medical reasons."

After his hospitalization, Bulloch returned to limited duty and was set to undergo a "fitness-for-duty" medical examination, which had been requested by Dr. Thomas Griggs, the NCHP medical director, and ordered by NCHP Commander Colonel William Fletcher Clay, Jr. Before that examination was performed, however, Colonel Clay terminated Bulloch's employment.

Dr. Moira Artigues, an expert in the field of forensic psychiatry who conducted a forensic evaluation of Bulloch, testified at the hearing that Bulloch's behavior during the incident "had a medical basis" and was caused by "[b]ipolar [d]isorder and associated medications."

Based on the foregoing evidence, ALJ Gray concluded in a 15 January 2010 order that termination of Bulloch's employment for unacceptable personal conduct (1) "was based upon an incomplete investigation and decision-making process"; (2) "was violative of [NCHP's] own rules and order of [Colonel Clay]"; (3) "was arbitrary and capricious because it failed to consider a known, underlying medical condition"; and (4) "is not supported by substantial evidence constituting just cause." Thus, ALJ Gray decided that Bulloch was entitled to reinstatement.

Thereafter, in a decision and order dated 13 July 2010, the State Personnel Commission (the "SPC") adopted ALJ Gray's findings, conclusions, and decision and ordered that Bulloch be reinstated.

On 13 August 2010, the Department sought judicial review of the SPC's decision and order in Wake County Superior Court. On judicial review of an agency's final decision, a trial court may reverse or modify such a decision only if the trial court determines that the substantial rights of the party seeking review have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2009); *see also N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 658-59, 599 S.E.2d 888, 894 (2004). In this case, after a 1 August 2011 hearing before the Honorable Howard E. Manning, Jr., the trial court reviewed the SPC's decision and order, concluded that the Department's rights were not prejudiced by any of the errors listed above, and affirmed the SPC's decision and order. From that order, the Department appeals to this Court.

On appeal from a trial court's review of a final agency decision, an appellate court's task is to examine the trial court's order for error of law by "(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) determining whether the court did so properly." *Holly Ridge Assocs., LLC v. N.C. Dep't of Env't & Natural Res.*, 361 N.C. 531, 535, 648 S.E.2d 830, 834 (2007). For errors alleged regarding violations of subsections 150B-51(b)(1) through (4), the appellate court engages in *de novo* review; for errors alleged regarding violations of subsections 150B-51(b)(5) or (6), the "whole record test" is appropriate. *Carroll*, 358 N.C. at 659-60, 599 S.E.2d at 895. The Department concedes that the trial court exercised the appropriate scope of review. Thus, our review of the trial court's decision is limited to whether the trial court erroneously applied that scope of review, *i.e.*, whether the court correctly concluded that the Department's rights were not prejudiced by any of the errors listed in section 150B-51(b).

The Department's overarching argument on appeal is that the trial court erred by concluding that the SPC properly determined that the Department did not have just cause to dismiss Bulloch from employment. The Department contends that the SPC's ultimate conclusion that the Department lacked just cause was itself erroneous and also that many of the SPC's supporting findings of fact and con-

clusions of law were erroneous such that the just cause conclusion should be reversed. For the following reasons, we are unpersuaded.

As recently held by this Court in *Warren v. N.C. Dep't of Crime Control & Pub. Saftey*, ___ N.C. App. ___, 726 S.E.2d 920 (2012), determining whether a State agency had just cause to discipline an employee requires three inquiries: (1) whether the employee engaged in the conduct the employer alleges; (2) whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the North Carolina Administrative Code; and (3) whether that unacceptable personal conduct amounted to just cause for the disciplinary action taken. *Id.* at ___, 726 S.E.2d at 925. As Bulloch admitted to his actions in this case, only the latter two inquiries are relevant to this appeal.

Regarding the second inquiry, the North Carolina Administrative Code provides that unacceptable personal conduct includes "the willful violation of a known or written work rule." 25 NCAC 1J .0614(I). The work rule violation that led to Bulloch's dismissal in this case was his allegedly willful violation of the NCHP's policy on unbecoming conduct, which forbids conduct that "tends to bring the [NCHP] into disrepute" or "reflects discredit upon any member(s) of the [NCHP]." The SPC concluded in its order, however, that Bulloch "did not do anything . . . to intentionally violate any [NCHP] policy" and "did not commit any willful unbecoming conduct." Accordingly, the SPC's order indicates that the Department's decision did not satisfy the second inquiry of the *Warren* just cause analysis.

The Department contends on appeal, however, that the SPC's conclusion on this issue was error because Bulloch's conduct was an intentional and willful violation of the NCHP's unbecoming conduct policy constituting unacceptable personal conduct. This alleged error, the Department urges, warrants reversal of the SPC's conclusion that the Department lacked just cause to dismiss Bulloch. We disagree.

In its argument on this issue, the Department focuses on Bulloch's voluntary intoxication and that intoxication's alleged impact on Bulloch's conduct. In addressing this argument, we first address the Department's related argument that the trial court erroneously concluded that the following finding by the SPC was supported by substantial evidence: "There is no significant evidence to support a conclusion that alcohol was a substantial proximate cause of the behavior of [] Bulloch." In that argument, the Department contends that "all the evidence, including the testimony of [Bulloch] and

[Dr. Artigues]," supports a finding contrary to the challenged finding. The Department further argues that the SPC erred as a matter of law in failing to conclude that alcohol was a substantial proximate cause. We are unpersuaded.

While the Department is correct that Dr. Artigues testified that use of alcohol was a factor in Bulloch's behavior, Dr. Artigues also testified that Bulloch's behavior was caused by a combination of alcohol, Bulloch's first dose of lithium, "hypomania," and his being "relatively unmedicated for his bipolar disorder." Dr. Artigues further testified that Bulloch's bipolar disorder and his emotional breakdown were very important causal factors of Bulloch's conduct, such that Dr. Artigues concluded that Bulloch's conduct "was a direct result of his medical illness." Moreover, Bulloch testified that he had previously consumed alcohol and never had similar behavioral problems. In our view, the foregoing testimony serves as substantial evidence — i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Hilliard v. N.C. Dep't of Corr.*, 173 N.C. App. 594, 598, 620 S.E.2d 14, 18 (2005) — to support the SPC's finding that while alcohol "may have played some role in [Bulloch's] behaviors," alcohol was not "a substantial proximate cause of the behavior." Accordingly, we conclude that the challenged finding of fact is supported by substantial evidence. For the same reasons, we hold that the SPC's failure to conclude that alcohol was a substantial proximate cause of Bulloch's behavior was not erroneous as a matter of law.

Because we agree with the SPC that Bulloch's intoxication was not a substantial proximate cause of Bulloch's conduct, we find less convincing the Department's argument that the voluntary nature of Bulloch's intoxication requires a conclusion that Bulloch's conduct was intentional and willful. As found by the SPC, compared with Bulloch's intoxication, the more important factors in Bulloch's conduct were his bipolar disorder and his first dose of lithium. Indeed, the evidence shows that Bulloch had "a great deal of difficulty" managing his emotions because of his bipolar disorder and that his first dose of lithium "gave him some *unexpected* psychoactive effects." (Emphasis added). Dr. Artigues testified that the "common side effects of lithium" — including mental confusion and a breakdown of emotions — were consistent with Bulloch's behavior and are more likely to occur from a first dosage. Further, Dr. Artigues testified that because Bulloch was "essentially between medications" at the time of the incident, he was at an increased risk of "an adverse

reaction from a new medication like lithium." The foregoing evidence, tending to show that Bulloch was not fully in control of his behavior due to his first dose of lithium and his bipolar disorder, serves as substantial evidence that Bulloch's behavior was not intentional, but rather was a result of his medical condition and the unexpected effects of his prescribed treatment.

Moreover, irrespective of the accuracy of the SPC's conclusion that Bulloch's conduct was not intentional and willful behavior that constituted unacceptable personal conduct, we cannot conclude that any error in these conclusions was prejudicial to the Department and warrants reversal of the SPC's conclusion that the Department lacked just cause to dismiss Bulloch. *Cf.* N.C. Gen. Stat. § 150B-51(b) (providing that a reviewing court may only reverse or modify a final agency decision where an erroneous finding or conclusion prejudices the substantial rights of an aggrieved party). As noted *supra,* under the three-part just cause analysis from *Warren,* even if an employee's conduct constitutes unacceptable personal conduct, it must still be determined whether that unacceptable personal conduct amounted to just cause for the disciplinary action taken because "not every instance of unacceptable personal conduct . . . provides just cause for discipline." *Warren,* ___ N.C. App. at ___, 726 S.E.2d at 925. Thus, were we to assume that Bulloch's conduct qualified as unacceptable personal conduct, it must *then* be determined whether that misconduct amounted to just cause for dismissal, which determination is to be made based upon an examination of the facts and circumstances of each individual case. *Id.*

According to our Supreme Court:

> Just cause, like justice itself, is not susceptible of precise definition. It is a flexible concept, embodying notions of equity and fairness, that can only be determined upon an examination of the facts and circumstances of each individual case.

*Id.* at 669, 599 S.E.2d at 900-01 (internal quotation marks and citations omitted). In light of the facts and circumstances of a case, the "fundamental question" is whether the disciplinary action taken was "just." *Id.* at 669, 599 S.E.2d at 900. "Inevitably, this inquiry requires an irreducible act of judgment that cannot always be satisfied by the mechanical application of rules and regulations." *Id.*

In this case, to determine whether the Department's dismissal of Bulloch was just, the SPC took into account many factors, including

Bulloch's training and experience, whether his conduct was an iso-lated incident, the intentional nature of Bulloch's actions, any injury or medical condition that may have contributed to Bulloch's conduct, the effect of Bulloch's conduct on his colleagues, the likelihood of recurrence, the effect of the conduct on work performance, any extenuating, aggravating, or mitigating circumstances, the blamewor-thiness of Bulloch's motives, the fairness and completeness of the Department's investigation into Bulloch's conduct, selectivity of enforcement, and the proximate cause of Bulloch's conduct. The SPC "weighed and balanced" all of these factors and concluded that "the totality of all the pertinent factors militate in [] Bulloch's favor." The SPC further concluded that

> the [] evidence of record demonstrates that the off-duty conduct in issue followed and was proximately caused by [Bulloch's] [b]ipolar [d]isorder medical condition and his first ingestion of a prescribed medication, [l]ithium. This first ingestion of this new medicine, which combined with [Bulloch's] medical condition and some alcohol, proximately caused [Bulloch] to contemplate suicide, discharge a weapon into the floor at his home, and some related behaviors.

The SPC's findings indicate, however, that despite the existence of this causal medical condition, the Department did not obtain a fitness-for-duty examination, which "likely would have provided especially relevant evidence that was necessary for proper personnel decision [-]making consideration under *Carroll*." This failure to undertake a full medical examination, the SPC concluded, demonstrated the Department's "arbitrariness and irrationality in the consideration of [] Bulloch's rights." Indeed, the SPC's findings indicate that Colonel Clay was almost completely unaware of the effects of bipolar disor-der and the side effects of lithium. As such, the SPC concluded that the Department "failed to properly consider substantial and highly relevant facts and circumstances." Ultimately, the SPC determined that the Department did not have just cause to dismiss Bulloch because (1) Bulloch's conduct, including his threatened suicide, was a "direct result of his underlying medical illness and the pharma-cological effect of his first dosage of the psychoactive drug, [l]ithium"; and (2) the Department did not fully consider Bulloch's medical condition and, thus, did not fully and properly investigate the incident before determining whether discipline would be appropriate.

Upon judicial review, the trial court concluded that the SPC's con-clusions and determination that just cause did not exist were not

erroneous as a matter of law. We agree. In our view, the forgoing conclusions are supported by the SPC's findings and are not erroneous as a matter of law. Moreover, we hold that these conclusions properly support the SPC's ultimate conclusion that the Department lacked just cause to dismiss Bulloch.

The evidence clearly shows that, but for the 14 December 2004 incident, Bulloch was an excellent employee of the NCHP. The evidence further shows that the cause of this single incident was a controllable — but at the time uncontrolled, through no fault of Bulloch — medical condition and the unexpected side effects of prescribed treatment. However, despite the ability of the Department to investigate these causes and their roles in the incident, Bulloch was dismissed from employment before an adequate investigation was completed and before Bulloch's supervisor, Colonel Clay, gained any sort of understanding of Bulloch's condition ·and treatment. Moreover, Bulloch's dismissal for hurting his girlfriend and attempting to hurt himself was in spite of far more lenient disciplinary action in previous cases where, according to evidence in this case, the NCHP (1) gave a trooper a five percent reduction in pay for "making 22 threatening phone calls to his ex[-]wife and threatening to kill her" and for attempting to initiate a traffic stop of his ex-wife without lawful reason; and (2) gave a trooper five days of suspension without pay for assaulting an ex-girlfriend by "grabbing, choking and striking her" and, on another occasion, "plac[ing] [a woman] in a bent wrist arm lock to the point it hurt." The forgoing evidence, in our view, is sufficient to support the determination that the Department did not have just cause to dismiss Bulloch for his conduct on 14 December 2004.

Nevertheless, the Department argues that the SPC's determination that just cause did not exist was improper because it was based on the erroneous findings and conclusions that "a fitness-for-duty evaluation was necessary or appropriate to resolve an issue in question."

Initially, it appears that the SPC considered the nonperformance of the fitness-for-duty evaluation for two separate reasons. First, the SPC considered the evaluation's nonperformance as evidence of lack of just cause for dismissing Bulloch in that it showed that the Department "failed to properly consider substantial and highly relevant facts and circumstances regarding [] Bulloch's medical history, his underlying medical and pharmacological conditions on [14 December 2004], [and] the effect those conditions exerted on his behavior on that night." Second, the SPC considered the nonperformance in support of "an alternative ground for not imposing formal

discipline where an agency fails to comply with its own policy." The Department's argument on this issue goes only to this second consideration. The Department contends that the fitness-for-duty evaluation is used only to determine whether an employee is medically capable of performing his duties. The Department goes on to argue that because Bulloch was dismissed due to his conduct on 14 December 2004—and thus would not be returning to his duties—the fitness-for-duty evaluation was unnecessary.

Assuming the Department's argument on this issue is correct and the failure to complete the fitness-for-duty evaluation was not a violation of agency policy, these findings do not warrant a reversal or modification of the SPC's decision and order. As noted *supra*, a reviewing court may only reverse or modify a final agency decision where an erroneous finding or conclusion *prejudices* the substantial rights of the appealing party. N.C. Gen. Stat. § 150B-51(b). In this case, the SPC's findings and conclusions regarding the Department's policy on performing fitness-for-duty evaluations support an *alternative* ground for reversing the Department's decision to terminate Bulloch's employment, *i.e.*, that the decision was "violative of [the Department's] own rules." Irrespective of the SPC's reversal based on the Department's violation of its own rules, the SPC, separately and in the alternative, reversed the Department's decision on grounds of lack of just cause "for the termination of [] Bulloch under [] unique and particular facts and circumstances." As discussed *supra*, this conclusion by the SPC that the Department lacked just cause to dismiss Bulloch was correct. Thus, we need not address the correctness of the alternative ground for reversal and any error with respect to that alternative ground cannot be prejudicial. *Cf. State ex rel. Edmisten v. Tucker*, 312 N.C. 326, 357, 323 S.E.2d 294, 314 (1984) (holding that where a lower court's ruling is based on alternative grounds, a court on appeal need not address the second alternative ground where the appellate court determines that the first alternative ground was correct). Accordingly, the Department's argument is overruled.

The Department next argues that the SPC's application of the "rational nexus" test from *Eury v. N.C. Employment Sec. Comm'n*, 115 N.C. App. 590, 446 S.E.2d 383, *disc. review denied*, 338 N.C. 309, 451 S.E.2d 635 (1994), was erroneous and warrants reversal of the SPC's conclusion that the Department did not have just cause to terminate Bulloch's employment. We agree that application of the rational nexus test was erroneous, but we disagree that such error warrants reversal.

The rational nexus test, as enunciated in *Eury*, applies where an employee has been dismissed based upon an act of off-duty criminal conduct and requires the agency to "demonstrate that the dismissal is supported by the existence of a *rational nexus* between the type of [off-duty] criminal conduct committed [by the employee] and the potential adverse impact on the employee's future ability to perform for the agency." *Id.* at 611, 446 S.E.2d at 395-96 (emphasis in original). This burden on an agency is in addition to the burden on the agency to prove that there was just cause for dismissal of the employee. *See* N.C. Gen. Stat. § 126-35(d) (2011). However, in *Warren*, a decision filed nine months after the Department gave notice of appeal in this case, we stated that there was no "binding precedent applying the rational nexus test to non-criminal conduct" and "decline[d] to extend this test to non-criminal conduct." ___ N.C. App. at ___, 726 S.E.2d at 924. Accordingly, where an agency disciplines an employee based on off-duty non-criminal conduct, that agency is not required to prove the existence of a rational nexus between the employee's conduct and his future performance. *Id.*

Nevertheless, we cannot conclude that the SPC's application of the rational nexus test resulted in prejudice to the Department in this case. First, we note that in the SPC's decision and order, the rational nexus test was considered separately from, and in addition to, the SPC's determination of the nonexistence of just cause. In its designation of the issues before it, the SPC listed the first issue as "[w]hether [the Department has] proven that there was just cause to terminate [Bulloch's] employment," and it listed as a second, separate issue "[w]hether [the Department has] proven . . . *a rational nexus* between [Bulloch's] off-duty conduct and potential adverse impact on [Bulloch's] future ability to perform." Moreover, the SPC concluded separately in its decision and order that (1) the "totality of all the pertinent factors militate in [] Bulloch's favor and [] there was no adequate just cause for termination," and (2) "[the Department] failed to prove that there was a rational nexus." Thus, it appears from the decision and order that the SPC concluded the Department did not have just cause to dismiss Bulloch irrespective of the Department's ability to prove a rational nexus between Bulloch's conduct and his future performance.

Second, although under *Warren* the SPC may not require an agency to satisfy the burden of proving a rational nexus between off-duty non-criminal conduct and an employee's ability to perform, the SPC's consideration of factors relevant to the rational nexus analysis—

including the likelihood of recurrence, extenuating, aggravating, and mitigating circumstances, and the blameworthiness of the motives of the conduct, *Eury*, 115 N.C. App. at 611, 446 S.E.2d at 396—does not necessarily warrant a finding of prejudice. Indeed, as noted *supra*, just cause is "a flexible concept, embodying notions of equity and fairness, that can only be determined upon an examination of the facts and circumstances of each individual case." *Carroll*, 358 N.C. at 669, 599 S.E.2d at 900 (internal quotation marks and citations omitted). Certainly, on examination of all the facts, circumstances, and equities of a case, consideration of additional factors shedding light on the employee's conduct is not improper. Thus, we conclude that, while the SPC improperly burdened the Department with proving a rational nexus in this case, that burden did not prejudice the Department because (1) the SPC considered the Department's burden to show just cause separately from its burden to prove a rational nexus and (2) because many of the factors relevant to that second burden were also relevant to the first. Accordingly, the Department's argument on this issue is overruled.

The Department next argues that, in analyzing factors to determine the existence of just cause, the SPC "erred as a matter of law in relying on the seven-factor test in *Enterprise Wire*." The Department contends that the SPC's consideration of factors listed in *"In re Enterprise Wire Co. & Enterprise Indep. Union*, 46 Lab. Arb. Rep. (BNA) 359 (Mar 28, 1966),"[2] was error because application of that decision "does not allow the agency to consider all relevant factors" and improperly requires "mechanical application of rules." We are unpersuaded.

Initially, we note that the SPC did not consider the factors from *Enterprise Wire* as exclusive and, indeed, considered many other factors beyond those listed in the case. Further, the SPC did not improperly conclude that it was bound by the *Enterprise Wire* decision as the Department suggests. Rather, the SPC simply noted that its previous decisions had recognized the *Enterprise Wire* factors and, in this case, used those factors "[i]n addition to the analysis and factors" from other North Carolina cases. There was no improper "mechanical application of rules" as the Department suggests. The Department's argument is overruled.

The Department next argues that the SPC improperly considered Bulloch's post-termination employment record, as well as his post-

---

2. As noted by the Department, *Enterprise Wire* is a labor arbitration decision not issued by an appellate court in this state and has no precedential value.

termination compliance with medical advice and "recovery from his aberrational behavior" in the just cause analysis. We agree. As correctly noted by the Department, evidence of Bulloch's subsequent employment record and conduct was not available to the Department at the time the decision to dismiss Bulloch was made. Thus, the SPC's consideration of that information in determining whether the Department could properly have dismissed Bulloch when they did was improper. However, we cannot conclude that the SPC's consideration of Bulloch's subsequent employment and conduct was prejudicial to the Department. We note initially that, although the Department did not have the information when Bulloch was dismissed, the fact that Bulloch ably continued his law enforcement career while appropriately dealing with his medical conditions confirms the SPC's findings regarding Dr. Artigues' testimony that people with bipolar disorder "can lead normal and productive lives, including holding jobs that are very stressful." Confirmation of these findings furthers the SPC's conclusion that the Department should have gained a fuller understanding of the cause of Bulloch's behavior before making the decision to dismiss him. Moreover, ignoring the findings and conclusions of the SPC regarding Bulloch's subsequent employment and conduct, we still conclude, in our *de novo* review of the SPC's determination of the Department's lack of just cause, that the remaining findings and conclusions discussed *supra* sufficiently support the SPC's just cause determination. Indeed, irrespective of Bulloch's subsequent employment and conduct, the evidence of the underlying medical cause for Bulloch's behavior, including his attempted suicide, and of the Department's failure to fully investigate that cause before dismissing Bulloch is sufficient to support the SPC's determination that the Department lacked just cause. As the pre-termination evidence in this case fully supports the SPC's just cause determination, we cannot conclude that a different result would have been obtained had the SPC ignored the post-termination evidence presented by Bulloch. Thus, the SPC's consideration of Bulloch's post-termination employment was not prejudicial error. The Department's argument is overruled.

The Department next argues that the SPC erred in finding Bulloch's "truthfulness and candor" about the 14 December 2004 incident as a mitigating factor in the just cause analysis. We disagree. Although the Department may be correct that Bulloch had a duty to be truthful in his communications with his employer, he certainly could have ignored that duty and impeded the Department's investi-

gation of his actions. Accordingly, we see no error in the SPC's consideration of Bulloch's truthfulness as a mitigating factor.

The Department next argues that the SPC erred in considering "some limited evidence of selective enforcement and disparate treatment in discipline by [the Department]" offered by Bulloch. The Department contends that this evidence was irrelevant to this case. We disagree. As noted by the SPC, the "limited evidence" included actions by NCHP employees that involved "improper intent," such as repeatedly threatening to kill and unlawfully pulling over an ex-wife, assaulting an ex-girlfriend and placing her "in a bent wrist arm lock to the point it hurt," and assaulting another trooper. The SPC considered these examples and noted that the NCHP employee was not terminated in each case. In our view, this evidence was relevant to this case and, thus, not improperly considered by the SPC. The Department's argument is overruled.

The Department next argues that several of the SPC's findings and conclusions regarding the existence of just cause are erroneous because they "indicate that [the Department] cannot dismiss [Bulloch] for his misconduct because it relates to his bipolar condition." This argument, however, misapprehends the SPC's determination. Rather than concluding that Bulloch's medical condition precludes his dismissal, the SPC concluded that (1) Bulloch's medical condition was a substantial cause of Bulloch's conduct, (2) Bulloch's first dose of a prescribed medication had unintended effects and substantially caused Bulloch's conduct, and (3) the Department's failure to fully investigate these causes showed an inadequate and irrational decision-making process. Nothing in the SPC's decision and order indicates that the mere existence of a medical condition precludes dismissal; however, the SPC is clear that such a condition ought to be fully taken into account before disciplinary action is taken. We agree, and, thus, overrule the Department's argument.

Finally, the Department contends that the SPC's conclusion that the Department "failed to consider all relevant factors in determining just cause for dismissal" is erroneous because Colonel Clay considered multiple factors, including "medical information regarding bipolar disease and depression," before dismissing Bulloch. However, as found by the SPC and undisputed by the Department, at the time of dismissal, Colonel Clay "could not tell whether [b]ipolar [d]isorder could cause certain types of human behaviors," "was not familiar with [l]ithium then or now," did not have a thorough understanding of

bipolar disorder, "reviewed" but did not read "in its entirety" a document from the National Institute of Mental Health on bipolar disorder brought to him after the incident, and "could not recall any discussions or communications at all with Dr. Griggs about the effects of [l]ithium on a patient who had been diagnosed with depression and [b]ipolar [d]isorder." In our view, the foregoing findings clearly support the SPC's conclusion that the underlying causes of Bulloch's conduct were not fully considered by the Department before termination. Accordingly, the Department's argument is overruled.

Based on the foregoing, we conclude that the SPC correctly determined that the Department did not have just cause to dismiss Bulloch. Therefore, we hold that the trial court's review of the SPC's decision and order was proper and that the trial court correctly affirmed the SPC's decision and order.

AFFIRMED.

Judges STEELMAN and THIGPEN concur.