MARK C. BEASON, Petitioner
v.
NORTH CAROLINA DEPARTMENT OF THE SECRETARY OF STATE, Respondent

No. COA12-837

Filed 2 April 2013

**1. Appeal and Error—interlocutory orders and appeals—substantial right—violations and enforcement of lobbying laws**

Although respondent's appeal from the trial court's order reversing and setting aside a civil fine assessment imposed against petitioner was from an interlocutory order, a substantial right was affected entitling respondent to immediate appellate review since respondent was charged with investigating violations of and enforcing Articles 2, 4, and 8 of the lobbying laws pursuant to N.C.G.S. § 120C-600 (a-b).

**2. Administrative Law—lobbying law—civil fine—set aside**

The trial court did not err by reversing and setting aside the civil fine assessment imposed against petitioner lobbyist who was attempting to amend or repeal the "Buy America" law. Respondent lacked authority to interpret the lobbying laws and to find violations of those laws through the common law doctrine of acting in concert.

---

**3. Administrative Law—lobbying law—lobbyist principal—no compensation**

The trial court did not err by concluding that the Engineering Export Promotion Council (EEPC) was not a lobbyist principal of petitioner's because petitioner received no compensation from EEPC.

Appeal by respondent from order entered 6 January 2012 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 8 January 2013.

*Bailey & Dixon, LLP, by Sabra J. Faires, Michael L. Weisel, and Adam N. Olls, and Allen, Pinnix & Nichols, P.A., by M. Jackson Nichols, Anna Baird Choi, and Catherine E. Lee, for petitioner-appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Daniel Snipes Johnson and Assistant Attorney General Melissa H. Taylor, for respondent-appellant.*

HUNTER, Robert C., Judge.

Respondent the North Carolina Department of the Secretary of State appeals the trial court's order reversing and setting aside the civil fine assessment imposed against petitioner Mark Beason. After careful review, we affirm the trial court's order.

This case involves the lobbying efforts of petitioner to repeal or amend N.C. Gen. Stat. § 136-28.7 (2011), commonly known as the "Buy America" law, which prohibits the North Carolina Department of Transportation from purchasing or using foreign-made steel and iron in highway construction projects. Petitioner has been working as a lobbyist since 1999. His father, Donald Beason ("Don"), was also a registered lobbyist in North Carolina from 1993 to 2007. Between late 2006 and August 2007, petitioner worked with his father at Beason Government Affairs (BGA), a lobbying firm. Respondent and the North Carolina Ethics Commission are the administrative agencies statutorily charged with enforcing and administering Chapter 120C of the North Carolina General Statutes (the "lobbying laws"). N.C. Gen. Stat. § 120C-600 and § 120C-601 (2011).

In late 2006, Sigma, a New Jersey corporation that imports and sells foreign manufactured cast iron and steel products in the United States,

and Don discussed the possibility of Don lobbying on behalf of Sigma and/or the Engineering Export Promotion Council ("EEPC"), an Indian trade association for exporters of iron products from India. During those discussions, Sigma requested that Don send a proposal for lobbying services so that Sigma could forward it to EEPC. Don sent a proposal indicating that petitioner, Don, and T. Jerry Williams ("Mr. Williams"), an independent contractor of BGA, would perform lobbying services to amend or repeal the "Buy America" law. In December 2006, EEPC sent Don an unsigned agreement that incorporated Don's proposal and indicated that EEPC was the client. Don signed his own name and petitioner's name on the proposed contract and returned it to Sigma for EEPC to sign. EEPC refused to execute the contract. There is no evidence in the record that petitioner had any knowledge of this unexecuted contract.

In February 2007, Sigma executed a contract with BGA. The contract stated that petitioner, Don, and Mr. Williams would lobby on behalf of Sigma and be paid $95,000 plus expenses. Documents obtained by respondent during its investigation indicate that five companies engaged in importing and selling iron products—specifically, EEPC; Star Pipe Products ("Star"); General Foundries, Inc. ("GF"); Serampore Industries Products (Ltd.) Inc.; and Capitol Foundry of Virginia ("Capitol")—agreed to reimburse Sigma for its contract with BGA. After executing the contract, both petitioner and Mr. Williams lobbied on behalf of Sigma to repeal the "Buy America" law. Petitioner, Don, and Mr. Williams all registered with respondent as lobbyists for Sigma.

In March 2007, in response to safety concerns of Indian iron products, Don attended a meeting in Washington, D.C. with Sigma representatives, EEPC, and various other representatives of companies involved with exporting Indian Steel. Petitioner and Mr. Williams were not aware of this meeting.

In October 2007, respondent initiated an investigation into Don and petitioner's lobbying activities. On 31 March 2010, respondent issued a civil fine assessment against petitioner for three alleged violations of the lobbying laws. Specifically, respondent contended that petitioner violated section 200 by failing to register as a lobbyist for EEPC, section 402 by failing to file lobbyist reports as a lobbyist for EEPC, and section 200 by failing to disclose to designated individuals that he was a lobbyist for EEPC. In the fine, respondent noted that the fine was based on petitioner's " 'coordinated efforts' on behalf of the registered principal, Sigma, and EEPC" and his "acting in concert" with numerous individuals

and business entities in his lobbying efforts. Respondent fined petitioner $6000 based on these alleged violations of the lobbying laws.

On 29 March 2010, respondent also issued a civil fine assessment against Don, citing nine violations of the lobbying laws and related administrative rules. Don was ordered to pay a civil fine totaling $111,000.

On 15 April 2010, because they were both fined by respondent, petitioner and Don filed a joint petition for a contested case hearing with the Office of Administrative Hearings appealing their civil fine assessments. The matter came on for hearing on 30 August 2010, and Administrative Law Judge Fred G. Morrison, Jr. ("ALJ Morrison") issued his Decision ("ALJ Decision") on 22 November 2010. Relying on the definition of lobbying in N.C. Gen. Stat. § 120C-100(a)(9)[1], ALJ Morrison concluded that "[t]he activities of Don Beason, Mark Beason, and T. Jerry Williams during 2007 to seek repeal or amendment of the 'Buy America' law constituted lobbying." Because petitioner failed to register as a lobbyist for EEPC, failed to disclose to designated individuals that he was lobbying on behalf of EEPC, and failed to file lobbyist reports as a lobbyist for EEPC, the ALJ Decision upheld the $6000 penalty assessed against petitioner.

Petitioner filed a Petition for Judicial Review, including a North Carolina Constitutional Claim, in Wake County Superior Court on 8 March 2011. On 8 April 2011, respondent issued its Final Agency Decision, affirming in part and modifying in part the ALJ Decision. The Final Agency Decision adopted the conclusion, made by ALJ Morrison, that petitioner's "activities" constituted lobbying. Moreover, respondent concluded that the "joint lobbying activities of Don Beason and Mark Beason" violated N.C. Gen. Stat. § 120C-200 and § 120C-402 (the same violations found by ALJ Morrison). Thus, the civil fine assessment against petitioner was affirmed.

In response to the Final Agency Decision, petitioner filed an Amended Petition for Judicial Review ("Amended Petition"), which also included a North Carolina Constitutional Claim, in Wake County Superior Court. In response to various discovery motions and respondent's motion to dismiss petitioner's constitutional claim in his Amended Petition, the trial court issued an order deferring ruling on the discovery motions, staying discovery, and staying petitioner's constitutional claim. The trial court also dismissed petitioner's 8 March 2011 Petition for Judicial Review

---

1. We note that ALJ Morrison cites to N.C. Gen. Stat. § 120C-100(a)(10) when quoting the definition of "lobbying." However, the definition of "lobbying" is found in section 100(a)(9).

and stated that petitioner's Amended Petition was the matter currently pending before the trial court.

On 5 December 2011, petitioner's Amended Petition came on for hearing. On 6 January 2012, Judge Ridgeway issued a Memorandum of Decision and Order ("order"), reversing and setting aside the civil fine assessment against petitioner. Specifics of the order will be discussed as they relate to respondent's arguments on appeal. Respondent appealed the order on 3 February 2012. On 23 August 2012, petitioner filed a motion to dismiss the appeal.

## Grounds for Appeal

[1] As an initial matter, we must determine whether respondent's appeal is interlocutory. Petitioner claims that the appeal is interlocutory because the order did not resolve all of his claims for relief, specifically, his constitutional *Corum* claim.[2] Therefore, the order was not a final order, and the appeal should be dismissed.

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381, *rehearing denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). There is no evidence in the record that the trial court addressed petitioner's *Corum* claim besides its order staying it. Since petitioner's *Corum* claim is still pending, the trial court's order did not fully dispose of petitioner's case. Thus, we must conclude that petitioner's appeal is interlocutory.

However, an interlocutory appeal is immediately appealable if it involves a substantial right. *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999). To determine if an appeal involves a substantial right, "[e]ssentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment." *Goldston*, 326 N.C. at 726, 392 S.E.2d at 736.

We conclude that since respondent is charged with investigating violations of and enforcing Articles 2, 4, and 8 of the lobbying laws pursuant

2. In *Corum v. Univ. of N.C.*, 330 N.C. 761, 785-86, 413 S.E.2d 276, 291-92, *rehearing denied*, 331 N.C. 558, 418 S.E.2d 664 (1992), our Supreme Court concluded that, under specific circumstances, a plaintiff may bring a direct claim under our state constitution in the absence of an adequate state remedy and that sovereign immunity does not bar these claims.

to N.C. Gen. Stat. § 120C-600 (a-b), we find that respondent's right to carry out these duties is substantial. Moreover, respondent's ability to carry out its duties requires that it be able to act timely on allegations it believes constitute violations. The substantial basis of this appeal involves the trial court's order concluding that the alleged violations respondent fined petitioner for were not actually violations. In other words, the trial court found that respondent was improperly interpreting statutes it is responsible for investigating and enforcing. Thus, we conclude that respondent suffers the risk of injury if we do not consider the merits of this interlocutory appeal. Therefore, we deny petitioner's motion to dismiss.

## Standard of Review

Pursuant to N.C. Gen. Stat. § 150B-51(b) (2009) [3], a trial court reviewing a decision of an agency

> may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B–29(a), 150B–30, or 150B–31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

---

3. We note that N.C. Gen. Stat. § 150B-51 was modified by Session law in 2011. *See* 2011 N.C. Sess. Laws ch. 398, sec. 27 (2011). However, the modifications were not effective until 1 January 2012 and only apply to contested cases commenced on or after that date. Since the Final Agency Decision was issued 8 April 2011 and petitioner's Amended Petition was filed 2 May 2011, the trial court's review is governed by the version of N.C. Gen. Stat. § 150B-51 in effect prior to 1 January 2012.

The trial court's review of respondent's 8 April 2011 Final Agency Decision is governed by N.C. Gen. Stat. § 150B-51(c), which states:

> In reviewing a final decision in a contested case in which an administrative law judge made a decision, in accordance with G.S. 150B–34(a), and the agency does not adopt the administrative law judge's decision, the court shall review the official record, de novo, and shall make findings of fact and conclusions of law. In reviewing the case, the court shall not give deference to any prior decision made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision. The court shall determine whether the petitioner is entitled to the relief sought in the petition, based upon its review of the official record.

Our standard of review of a trial court's order reviewing a final agency decision is well-established:

> On appeal from a trial court's review of a final agency decision, an appellate court's task is to examine the trial court's order for error of law by (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) determining whether the court did so properly.

*Bulloch v. N.C. Dep't of Crime Control & Pub. Safety*, __ N.C. App. __, __, 732 S.E.2d 373, 377, *disc. review denied*, __ N.C. __, 735 S.E.2d 178 (2012). "For errors alleged regarding violations of subsections 150B–51(b)(1) through (4), the appellate court engages in *de novo* review; for errors alleged regarding violations of subsections 150B–51(b)(5) or (6), the 'whole record test' is appropriate." *Id.* Here, the trial court stated that it reviewed the matter *de novo*. Respondent does not allege that the trial court applied the wrong standard of review, only that it applied it incorrectly. Therefore, we must determine whether the trial court applied its *de novo* review properly.

### Arguments

[2] Respondent's overarching argument is that the trial court erred in concluding that respondent lacked authority to interpret the lobbying laws and find violations of those laws through the common law doctrine of "acting in concert." Specifically, respondent contends that its conclusion that petitioner was "lobbying" based on his "coordinated efforts"

and "acting in concert" with others was a proper interpretation of N.C. Gen. Stat. § 120C-100(a)(9), the statute defining "lobbying."

There seems to be two basic issues that must be resolved with regard to respondent's first argument. The first issue is whether respondent had the authority to interpret the lobbying laws. The second is whether respondent properly found that petitioner was a lobbyist for EEPC based on his "coordinated efforts" and "acting in concert" with others.

With regard to the first issue, whether respondent had the authority to interpret the lobbying laws, we conclude that the trial court properly found that respondent did not have such authority. "[T]he responsibility for determining the limits of statutory grants of authority to an administrative agency is a judicial function for the courts to perform." *McDonald v. N.C. Dep't of Corr.*, __ N.C. App. __, __, 724 S.E.2d 138, 140, *disc. review denied*, __ N.C. __, 731 S.E.2d 146 (2012). "An administrative agency is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislature grant of authority." *Boston v. N.C. Private Protective Servs. Bd.*, 96 N.C. App. 204, 207, 385 S.E.2d 148, 150-51 (1989).

In concluding that respondent lacked the authority to interpret the lobbying laws, the trial court looked to N.C. Gen. Stat. § 120C-101(a) (2011), the statute setting out the rule-making responsibilities of the Ethics Commission and respondent. Respondent was required to adopt any rules, orders, and forms necessary to administer the provisions of Articles 2, 4, and 8 of the lobbying laws. *Id.* However, the Ethics Commission was responsible for adopting rules necessary to *interpret all provisions of the lobbying laws* and for adopting rules necessary to administer Articles 1, 3, 5, 6, and 7 of the lobbying laws. *Id.* (emphasis added). Based on this statute, the trial court concluded that: (1) the legislature delegated the authority to interpret the lobbying laws to the Ethics Commission; (2) any interpretation of the lobbying laws by respondent was "not entitled to traditional deference by the [c]ourt"; and (3) any interpretation by respondent that would expand the plain meaning of the lobbying laws or define terms would be beyond its statutory authority.

While respondent, in administering Articles 2, 4, and 8 of the lobbying laws, would have the implied power to determine whether certain actions constituted violations of those laws, the power to interpret the lobbying laws has been expressly granted to the Ethics Commission pursuant to N.C. Gen. Stat. § 120C-101(a). "In performing its function, the power of an agency to interpret a statute that it administers is limited

by the actions of the legislature." *Charlotte-Mecklenburg Hosp. Auth. v. N.C. Dep't of Health & Human Servs.*, 201 N.C. App. 70, 72, 685 S.E.2d 562, 565 (2009). Here, the legislature has specifically stated that although respondent has the power to administer Articles 2, 4, and 8, respondent has no power to interpret any of the provisions of the lobbying laws. The power to interpret rests solely with the Ethics Commission. Thus, the legislature has given respondent no power to interpret the statutes it is charged with administering. Therefore, we affirm the trial court's conclusion that respondent does not have authority to interpret the lobbying laws and that any interpretation by respondent that expands or defines terms in a way that conflicts with the plain language of the statutes would be outside its statutory powers.

Moreover, we note that "[a]lthough the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts," *Charlotte-Mecklenburg Hosp. Auth.*, 201 N.C. App. at 73, 685 S.E.2d at 565, respondent had no authority to interpret the statutes it was charged with administering. Thus, we also affirm the trial court's conclusion that the interpretation of the lobbying laws by respondent was "not entitled traditional deference."

Next, we must determine whether respondent was authorized to find violations of the lobbying laws based on the common law doctrine of "acting in concert." In reviewing the lobbying laws, the trial court strictly construed them, concluding that they are penalty statutes. Statutes imposing penalties are to be strictly construed. *State v. Holmes*, 149 N.C. App. 572, 576, 562 S.E.2d 26, 30 (2002). "Statutes imposing penalties are similarly strictly construed in favor of the one against whom the penalty is imposed and are never to be extended by construction." *Winston-Salem Joint Venture v. City of Winston-Salem*, 54 N.C. App. 202, 205, 282 S.E.2d 509, 511 (1981). Respondent contends that the trial court erred in strictly construing the lobbying laws because, as a whole, they should not be considered penalty statutes, only the statutes in Article 6 entitled "Violations and Enforcement." However, the statutes in Articles other than Article 6 provide the basis for a penalty. Moreover, the statutes in Articles 2, 4, and 8 of the lobbying laws are specifically incorporated in N.C. Gen. Stat. § 120C-602(b), the statute authorizing respondent to "levy civil fines" for violations of statutes in those Articles. While the statutes in sections 200 and 400 are not per se penalty statutes, they allow the imposition of a fine or penalty under Article 6 of the lobbying laws. *See id.* Therefore, they constitute penalty statutes and must be strictly construed and in favor of petitioner. *See generally Winston-Salem Joint Venture*, 54 N.C. App. at 206, 282 S.E.2d at 511.

Strictly construing N.C. Gen. Stat. § 120C-100(a)(9), the statute that defines terms used in Articles 2, 4, and 8, we conclude that respondent improperly construed the definition of "lobbying" to find violations based on "coordinated efforts" or "acting in concert" with another. Pursuant to N.C. Gen. Stat. § 120C-100(a)(9) (2011), lobbying is defined as:

> a. Influencing or attempting to influence legislative or executive action, or both, *through direct communication or activities* with a designated individual or that designated individual's immediate family.

> b. Developing goodwill through communications or activities, including the building of relationships, with a designated individual or that designated individual's immediate family with the intention of influencing current or future legislative or executive action, or both.

(Emphasis added). Respondent only contended that petitioner engaged in "lobbying" as defined in subparagraph (a). The definition of lobbying at issue here specifically states that lobbying only includes direct communication or activities. Therefore, indirect communications, such as those that could be based on "acting in concert" or imputed liability, would not constitute lobbying. Here, the language and intent of the legislature is unambiguous, and respondent did not have room to construe the statute and find violations of the lobbying laws based on imputed liability. Thus, by doing so, respondent impermissibly expanded the definition of lobbying. We note that, as the trial court concluded, had the General Assembly wanted to include "indirect communication" in its definition of lobbying, it could have drafted the statute similar to Minnesota's statute, defining a lobbyist as an individual "engaged for pay or other consideration . . . for the purpose of attempting to influence legislative or administrative action, or the official action of a metropolitan governmental unit, by communicating *or urging others to communicate with public or local officials.*" Minn. Stat. § 10A.01, subd. 21 (2005) (emphasis added). Similarly, Mississippi defines "lobbying" as "(i) [i]nfluencing or attempting to influence legislative or executive action through oral or written communication; or (ii) *[s]olicitation of others to influence legislative or executive action.*" Miss. Code Ann. § 5-8-3 (2002) (emphasis added). However, here, our General Assembly did not include such language in the definition of "lobbying." Therefore, the trial court did not err in concluding that respondent exceeded its statutory authority by extending the definition of lobbying.

**[3]** Next, respondent argues that the trial court's conclusion that petitioner was not lobbying for EEPC because he was not aware of EEPC leads to absurd results. We disagree.

In its order, the trial court concluded that "EEPC was not a lobbying principal of [p]etitioner" because:

- There is no evidence that [p]etitioner was aware of the existence, the identity, or the purpose of EEPC;

- There is no evidence of communications between [p]etitioner and EEPC;

- There is no evidence of [p]etitioner's awareness of any communications, negotiations or discussions between Donald Beason and others regarding EEPC;

- There is no evidence of any compensation paid to [p]etitioner by EEPC;

- There is no evidence of direction or instructions from EEPC to [p]etitioner;

- The [p]etitioner's evidence is largely corroborated by the sworn testimony of a third party, T. Jerry Williams, who has been exonerated by the [r]espondent of any wrongdoing with respect to these matters; and

- The absence of any contradictory evidence offered by the [r]espondent to refute these findings[.]

In other words, the trial court concluded that EEPC was not a lobbyist principal for two primary reasons: (1) petitioner had no knowledge of EEPC, and (2) petitioner was not paid by EEPC.

The evidence relied upon by the trial court supported its conclusion that EEPC was not a lobbyist principal of petitioner. Pursuant to N.C. Gen. Stat. § 120C-100(a)(11), a lobbyist principal is defined as "[t]he person or governmental unit on whose behalf the lobbyist lobbies and who makes payment for the lobbying." Without knowledge of EEPC, petitioner could not have been lobbying on behalf of EEPC, an unknown entity. The findings of fact, which respondent did not challenge, overwhelmingly support this conclusion. Specifically, the trial court found that petitioner had no knowledge that EEPC existed or that Don had discussed a potential client relationship with it. In addition, with regard to the unexecuted contract between BGA and EEPC, the trial court noted that petitioner never saw the proposed contract nor was he aware of

its existence. Furthermore, the trial court found that respondent relied on petitioner's signature on that contract as its "lone piece of evidence" showing petitioner had knowledge of EEPC, even though respondent's investigation established that Don signed it for petitioner without petitioner's knowledge. Finally, the trial court determined that petitioner had not heard of EEPC and was not aware of it during the 2007 Session of the General Assembly, never saw or reviewed any correspondence of Don or any documents concerning EEPC, had no indication that he was lobbying for anyone else besides Sigma, and was never informed that Sigma was reimbursed by EEPC. Respondent fails to point to any contradictory evidence to refute these findings on appeal. Thus, we conclude that the trial court properly determined that EEPC was not a lobbyist principal of petitioner.

In a separate, yet related, argument, respondent seems to argue that EEPC was a lobbyist principal of petitioner's because petitioner received payment for his lobbying services, contrary to the trial court's order concluding otherwise. Respondent contends that N.C. Gen. Stat. § 120C-100(a)(11) does not require that payment be made directly to the lobbyist from the lobbyist principal. Accordingly, "[p]ayment to the source of [p]etitioner's clients constituted payment to him." However, the trial court specifically concluded that "[t]here [was] no evidence of any compensation paid to [p]etitioner by EEPC[,]" and respondent fails to point to any evidence in the record on appeal that EEPC made any payment to petitioner or BGA. Therefore, by not providing any contradictory evidence, respondent has not established grounds to support its contention that the trial court's conclusion was erroneous. Thus, we affirm the trial court's conclusion that EEPC was not a lobbyist principal of petitioner's because petitioner received no compensation from EEPC.

Conclusion

Based on the foregoing reasons, we affirm the trial court's order.

Affirmed.

Judges ELMORE and STEELMAN concur.